■ DEBORAH GILLMAN, Appellant, v LANCE E. GILLMAN, Respondent. [31 NYS3d 164]—

Appeal from stated portions of a judgment of the Supreme Court, Suffolk County (Carol MacKenzie, J.), entered March 13, 2014. The judgment, insofar as appealed from, upon a decision of that court dated September 12, 2013, made after a nonjury trial, inter alia, (a) awarded the plaintiff the sum of only $836.75 per week in child support, (b) awarded the plaintiff maintenance only until she reaches the age of 60, (c) directed that the parties equally share the repayment of the

$28,000 balance of a loan, (d) failed to direct the defendant to maintain a life insurance policy to secure the plaintiff's interest in maintenance and child support payments, (e) failed to direct the defendant to pay any portion of the children's college tuition, (f) failed to direct the defendant to pay the mortgage arrears on the marital residence, and (g) failed to direct the defendant to pay one half of the value of his life insurance policies and Prudential and Qualcomm stocks to the plaintiff.

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof awarding child support, (2) by deleting the provision thereof directing the defendant to pay maintenance until the plaintiff reaches the age of 60, and substituting therefor a provision directing the defendant to pay maintenance until the earliest of the plaintiff's eligibility for full Social Security benefits, her remarriage or cohabitation pursuant to Domestic Relations Law § 248, or the death of either party, (3) by adding a provision thereto directing the defendant to maintain a life insurance policy for the benefit of the plaintiff, until payment of child support and maintenance is completed, in an amount sufficient to secure those obligations, (4) by adding a provision thereto directing the defendant to pay the plaintiff one half of the value of his Prudential and Qualcomm stock, and (5) by adding a provision thereto directing the defendant to pay the mortgage arrears on the marital residence; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the matter is remitted to the Supreme Court, Suffolk County, for a new determination of the amount of the defendant's child support obligation, which amount shall be made retroactive to March 3, 2014; and it is further,

Ordered that pending a new determination by the Supreme Court of the child support payments to be made by the defendant, the child support payment to be paid by the defendant, as set forth in the judgment appealed from, shall remain in effect.

The plaintiff and the defendant were married in 1986, and have three children. At the time of the trial, none of the children was emancipated, although the parties' twins were 19 years old. Throughout the marriage, the defendant (born in 1959) was steadily employed, while the plaintiff (born in 1960) was the primary caregiver for the children and a homemaker. In 2005, the plaintiff started a home-decorating business out of the marital residence that generated an annual income of a few thousand dollars. After approximately 26 years of marriage, the plaintiff commenced this action for a divorce and

ancillary relief. The parties agreed that the plaintiff would have sole custody of the parties' youngest child, who was 14 years old. A nonjury trial was conducted to resolve the issues of maintenance, child support, and equitable distribution of certain assets. Following the trial, the Supreme Court, inter alia, (1) awarded the plaintiff the sum of $836.75 per week in child support, (2) awarded the plaintiff maintenance in the sum of $4,000 per month until she reaches the age of 60, and (3) directed that the parties equally share the repayment of the $28,000 balance of a loan. The plaintiff appeals from these portions of the judgment, as well as from the court's failure to direct the defendant to pay any portion of the children's college tuition, to bring the mortgage payments on the marital residence current, to maintain a life insurance policy to secure her interest in the maintenance and child support payments, and to pay one half of the cash-surrender value of his life insurance policies and Prudential and Qualcomm stocks.

Initially, in awarding the plaintiff $836.75 per week in child support, the Supreme Court failed to sufficiently articulate its reasons for capping the combined parental income at $176,000. "The Child Support Standards Act (see Domestic Relations Law § 240 [1-b]) sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to the statutory cap that is in effect at the time of the judgment" (McCoy v McCoy, 107 AD3d 857, 858 [2013]; see Holterman v Holterman, 3 NY3d 1, 11 [2004]), here, $136,000 (see Social Services Law § 111-i [2] [b]). For income exceeding $136,000, the court has broad discretion to apply the statutory child support percentage, or to apply the factors set forth in Domestic Relations Law § 240 (1-b) (f), or to apply both (see Matter of Cassano v Cassano, 85 NY2d 649, 654 [1995]). The court must " 'articulate its reason or reasons for [that determination], which should reflect a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage' " (McCoy v McCoy, 107 AD3d at 858, quoting Wagner v Dunetz, 299 AD2d 347, 350-351 [2002] [internal quotation marks omitted]. Here, while the Supreme Court stated that it considered some of the relevant factors, including the children's lifestyle during the marriage, the court failed to adequately articulate how these factors applied to the particular circumstances of this case and how it decided that $176,000, an amount less than the defendant's 2013 base salary of $181,000, was an appropriate limit on which to base his child support obligation (see McCoy v McCoy,

107 AD3d at 858). For instance, the record does not reflect that the court considered or gave sufficient weight to, among other things, the fact that the twins were not planning to return to college, were financially dependent upon their parents, and would be living at home full-time with the plaintiff. Therefore, it is appropriate to remit the matter to the Supreme Court to enable it to further articulate how the factors set forth in Domestic Relations Law § 240 (1-b) (f) support its determination capping the combined parental income for the purpose of calculating child support (*see Schack v Schack*, 128 AD3d 941, 942-943 [2015]; *Hymowitz v Hymowitz*, 119 AD3d 736, 742 [2014]; *McCoy v McCoy*, 107 AD3d at 858).

Next, insofar as the plaintiff challenges the duration of the maintenance award, the duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts (*see Lamparillo v Lamparillo*, 130 AD3d 580, 581 [2015]; *Hainsworth v Hainsworth*, 118 AD3d 747, 748 [2014]; *Marley v Marley*, 106 AD3d 961, 962 [2013]; *Giokas v Giokas*, 73 AD3d 688, 688 [2010]). "The factors to be considered in a maintenance award are, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (*Gordon v Gordon*, 113 AD3d 654, 654-655 [2014]; *see* Domestic Relations Law § 236 [B] [6] [a]). In general, an award of maintenance should be of a duration sufficient to permit the recipient to achieve economic independence (*see O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]; *DiBlasi v DiBlasi*, 48 AD3d 403, 404 [2008]). Here, the Supreme Court improvidently exercised its discretion in determining that the maintenance award should terminate when the plaintiff reaches the age of 60. Even though the plaintiff recently started a decorating business out of her home which provides her with some earning potential, in light of the parties' long-term marriage, respective ages, financial circumstances, and the plaintiff's limited work experience, it is unrealistic to believe that she will be able to achieve a "level of financial independence which would eliminate" her need to rely on the defendant's support (*D'Iorio v D'Iorio*, 135 AD3d 693, 696 [2016], quoting *Kret v Kret*, 222 AD2d 412, 412 [1995]; *see Hymowitz v Hymowitz*, 119 AD3d at 742; *Marley v Marley*, 106 AD3d at 962; *Giokas v Giokas*, 73 AD3d at 688). Accordingly, the dura-

tion of the plaintiff's maintenance should be until the earliest of her eligibility for full Social Security retirement benefits, her remarriage or cohabitation pursuant to Domestic Relations Law § 248, or the death of either party (*see D'Iorio v D'Iorio*, 135 AD3d at 696; *Hymowitz v Hymowitz*, 119 AD3d at 742; *Marley v Marley*, 106 AD3d at 962-963; *Giokas v Giokas*, 73 AD3d at 688).

In addition, the Supreme Court should have directed that the defendant maintain life insurance with the plaintiff as the named beneficiary in an amount sufficient to secure his child support and maintenance obligations (*see* Domestic Relations Law § 236 [B] [8] [a]; *Hartog v Hartog*, 85 NY2d 36, 50 [1995]; *Hainsworth v Hainsworth*, 118 AD3d at 749; *Baron v Baron*, 71 AD3d 807, 810 [2010]).

Contrary to the plaintiff's contention, the Supreme Court providently exercised its discretion in directing that the parties share in the responsibility of repaying the $28,000 balance of a loan provided by the husband's mother. Financial liabilities " 'incurred prior to the commencement of a divorce action constitute marital debt and should be equally shared by the parties' " (*Mosso v Mosso*, 84 AD3d 757, 760 [2011], quoting *Bogdan v Bogdan*, 260 AD2d 521, 522 [1999]; *see* Domestic Relations Law § 236 [B] [1] [c]). Here, the record established that the proceeds of the loan were used to improve the marital residence and, therefore, constituted marital debt (*see Mosso v Mosso*, 84 AD3d at 760; *Bogdan v Bogdan*, 260 AD2d at 522; *cf. Milnes v Milnes*, 50 AD3d 750, 751 [2008]).

The Supreme Court erred in failing to direct the defendant to pay one-half of the value of his Prudential and Qualcomm stocks to the plaintiff given that the court recognized that the parties stipulated to dividing these marital assets equally (*see Cusimano v Cusimano*, 149 AD2d 397, 398 [1989]).

Furthermore, under the circumstances of this case, the Supreme Court should have granted the plaintiff's request to direct the defendant to pay the mortgage arrears on the marital residence (*see Sember v Sember*, 72 AD3d 1150, 1151-1152 [2010]).

The plaintiff's remaining contentions are without merit. Hall, J.P., Austin, Sgroi and LaSalle, JJ., concur.